UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN FILLETI,

       Plaintiff,

       v.

AOL, INC.,

       Defendant.

Civil Action No. 18-cv-10529-ADB

# **MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

    Plaintiff John Filleti filed this action against Defendant AOL, Inc. ("AOL")[1] seeking unpaid wages and benefits arising out of his work for AOL while misclassified as an independent contractor. [ECF No. 1-2]. AOL moved to dismiss Count I of the complaint, which alleges that Mr. Filleti was misclassified as an independent contractor, pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 11]. For the reasons set forth below, AOL's partial motion to dismiss is GRANTED.

## I.    BACKGROUND

###     A.    Factual History

    The following facts are drawn from the complaint. The Court takes the well-pleaded allegations as true in evaluating the motion to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014). In early 2016, Mr. Filleti was contacted by AOL regarding work as a recruiter. [ECF No. 1-2 ¶ 5]. He accepted an offer to work as a full-time recruiter for at least six

---

[1] AOL, Inc. is now known as Oath, Inc. [ECF No. 1-1]. This order will refer to Defendant AOL, Inc. by the name AOL for consistency with the majority of papers submitted in this matter.

months and ultimately provided services for AOL from April 2016 to November 2016 and again from April 2017 through June 2017. [Id. ¶¶ 2, 5]. Between stints at AOL, he worked as a recruiter for another company. [Id. ¶¶ 11–13].

Before he started work for AOL, Mr. Filleti was told that he would be paid through an AOL vendor and was directed to enter into a contract with the vendor. [Id. ¶ 7]. AOL was involved in establishing the key terms and conditions of this contract. [Id.] AOL also provided Mr. Filleti with a company badge, email address, laptop, and phone line. [Id. ¶ 6]. During the time that Mr. Filleti provided services to AOL, he was paid a flat rate per hour and typically worked about 50 hours per week, though he was pressured to report 40 hours or less each week. [Id. ¶ 8]. During this same time, AOL offered a range of benefits to its employees, including "traditional benefits" such as paid time off and "modern forms of benefits" such as discounts or other amenities. [Id. ¶ 10]. AOL terminated Mr. Filleti in June 2017. [Id. ¶ 13].

### B. Procedural History

On January 31, 2018, Mr. Filleti filed a complaint in the Superior Court of Suffolk County alleging five counts: a violation of Mass. Gen. Laws ch. 149, § 148B (Count I); a violation of Mass. Gen. Laws ch. 149, § 148 (Count II); a violation of Mass. Gen. Laws ch. 151, § 1A (Count III); breach of contract (Count IV); and, promissory estoppel (Count V). [ECF No. 1-2]. AOL removed the case to this Court on March 20, 2018. [ECF No. 1]. On March 27, 2018, AOL filed an answer, [ECF No. 10], and a partial motion to dismiss, [ECF No. 11]. On March 29, 2018, Mr. Filleti opposed the partial motion to dismiss, [ECF No. 14], and on April 16, 2018, AOL replied, [ECF No. 18].

## II.     MOTION TO DISMISS STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Dismissal is appropriate if a plaintiff cannot prove any set of facts entitling him to relief. See Fed. R. Civ. P. 12(b)(6); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

## III.     DISCUSSION

In its partial motion to dismiss, AOL argues that Count I, which alleges that Mr. Filleti was misclassified as an independent contractor, is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to the extent that Mr. Filleti seeks to recover the value of employee benefits. [ECF No. 11 at 2].[2] ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). A conflict preemption analysis under ERISA requires the court to address two questions: "(1) whether the plan at issue is an 'employee benefit plan'

---

[2] Mr. Filleti brings Count I under Sections 148B and 150 of Massachusetts General Laws Chapter 149, which sets out criteria for determining which individuals performing services for a business entity are considered "employees." Mass. Gen. Laws ch. 149, § 148B(a). Section 148B also establishes civil and criminal liability for failing to properly classify an individual as an employee and the associated violations of Massachusetts laws setting forth minimum wage, overtime wage, and other employment provisions. Id. § 148B(d). Section 150 permits individuals to bring civil actions "for injunctive relief, for any damages incurred, and for any lost wages and other benefits" and awards treble damages "for any lost wages and other benefits," costs, and reasonable attorney's fees to prevailing employees. Id. § 150.

3

and (2) whether the cause of action 'relates to' this employee benefit plan." McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998) (quoting Rosario-Cordero v. Crowley Towing & Transp. Co., 46 F.3d 120, 124 (1st Cir. 1995)).

### A. The Plans at Issue Include "Employee Benefit Plans"

The first step of the ERISA conflict preemption analysis is to determine whether any plans offered by AOL and at issue in this action meet the criteria of an "employee benefit plan," as defined by ERISA. ERISA defines "employee benefit plans" to mean an "employee welfare benefit plan," an "employee pension benefit plan," or a plan that is both. 29 U.S.C. § 1002(3). ERISA further defines "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . ." Id. § 1002(1).

The complaint does not identify the specific employee benefit plans offered by AOL of which Plaintiff would have been a beneficiary if he had been classified as an employee or whether such plans would be covered by ERISA. Instead, the complaint states only that AOL offered "traditional benefits" such as "paid time off." [ECF No. 1-2 ¶ 10]. Paid time off is generally a "payroll practice" exempt from ERISA under Department of Labor regulations and would not be considered an ERISA-covered benefit. See 29 C.F.R. § 2510.3-1(b). No other "traditional benefits" are described. Notwithstanding the sparseness of the complaint on this point, neither party expressly contests the existence of an "employee benefit plan." Instead, both

4

AOL and Mr. Filleti proceed under the assumption that some portion of the benefit plans at issue are covered by ERISA. See [ECF No. 12 at 3 (representing in motion to dismiss that the "benefits that [Plaintiff] would have received had he been classified as an employee," would include ERISA-administered plans "such as the group health, dental, or retirement plans"); ECF No. 14 at 1, 11 (stating in opposition brief that "because Mr. Filleti was not classified by AOL as an employee, he was not eligible for and did not receive any fringe benefits, such as . . . health insurance . . . " and arguing that Mr. Filleti was not a "participant" in any of AOL's plans)]. Accordingly, the Court concludes that at least one "employee benefit plan" covered by ERISA is at issue in this case and proceeds to the second step of the preemption analysis.

### B. The Cause of Action "Relates To" the Employee Benefit Plans At Issue

The second step of the ERISA conflict preemption analysis is to determine whether Mr. Filleti's cause of action "relates to" the employee benefit plans at issue. In broad terms, "[a] law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983)). The Supreme Court has refined this analysis by identifying "three categories of state laws that 'relate to' ERISA plans . . . : (1) state laws that 'mandate[ ] employee benefit structures or their administration,' (2) state laws that 'bind plan administrators to [a] particular choice,' and (3) state law causes of action that provide 'alternative enforcement mechanisms' to ERISA's enforcement regime." Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir. 2000) (quoting N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995)). Only the third category is relevant here.

"[I]n order to assess whether the state law cause of action is an alternative enforcement mechanism, [courts] must 'look beyond the face of the complaint' and determine the real nature

5

of the claim 'regardless of plaintiff's . . . characterization.'" Hampers, 202 F.3d at 51 (quoting Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir. 1999)). The First Circuit has "consistently held that a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action." Id. at 52 (citing McMahon, 162 F.3d at 38, Boston Children's Heart Found., Inc. v. Nadal-Ginard, 73 F.3d 429, 440 (1st Cir. 1996), Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 793-94 (1st Cir. 1995), and Vartanian v. Monsanto Co., 14 F.3d 697, 698-99 (1st Cir. 1994)). In addition, Hampers held that "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan." Id. (citing Carlo, 49 F.3d. at 794).

AOL contends that Count I "relates to" ERISA under this framework and relies on three cases from this district that apply Hampers. See [ECF No. 12 at 3 (citing Remington v. J.B. Hunt Transport, Inc., Nos. 15-10010-RGS, 15-13019-RGS, 2017 WL 1552316, at *3 (D. Mass. Apr. 28, 2017) (Stearns, J.) and Reyes v. S.J. Servs., Inc., No. 12-11715-DPW, 2014 WL 5485943, at *13–14 (D. Mass. Sept. 22, 2014) (Woodlock, J.)); ECF No. 18 at 3–4 (citing Lavery v. Restoration Hardware, Inc., No. 17-10856, 2018 WL 1524398 (D. Mass. Mar. 28, 2018) (Casper, J.))].

First, AOL directs the Court to Reyes, in which cleaners employed by SJ Services ("SJ") brought a Wage Act claim for SJ's failure to provide them with healthcare benefits. Reyes, 2014 WL 5485943, at *1, 13. SJ contended that the claim for promised healthcare benefits was preempted by ERISA. Id. at *13. The Reyes plaintiffs responded that the dispute was not preempted because the case concerned employees being "denied benefits in their entirety" rather than a claim arising under a covered plan. Id. The plaintiffs further asserted that, because of

6

this, the court did not need to interpret any covered plan to determine liability and therefore, there was no ERISA preemption. Id. The court disagreed and concluded that the claim for promised healthcare benefits was preempted by ERISA because "[r]esolution of this case would require [the court] to look to the plan at least to determine damages, and likely liability as well . . . ." Id. at *14.

Second, AOL relies on Remington, which addressed a Wage Act misclassification claim brought by owner-operator drivers for J.B. Hunt Transport, Inc. ("JB"). Remington, 2017 WL 1552316, at *1. JB sought judgment on the pleadings for the misclassification claim on ERISA preemption grounds. Id. JB argued that the misclassification claim "related to" ERISA plans because "the court necessarily has to construe and interpret the plans in order to adjudicate plaintiffs' alleged eligibility and to determine the value of any benefits they would have received under the plans." Id. at *3. The Remington plaintiffs countered that the claims did not "relate to" ERISA plans because plaintiffs were "not seeking to recover benefits under the plans," "the value of any lost benefits is simply a component of their damages writ large," and plaintiffs' "Wage Law claims do not impede any of ERISA's enforcement interest" because plaintiffs were not plan participants. Id. The court found that the misclassification claim was preempted by ERISA because, as in Reyes, "to adjudicate plaintiffs' Wage Act benefit claims here, the court would be required to look to the terms of the ERISA plans to determine whether, had plaintiffs been classified as employees, they would have been eligible as plan participants, as well as to determine the value of the benefits the plans would have conferred." Id. at *3–4.

Third, AOL points to Lavery, which bears close resemblance to the instant action. In Lavery, the plaintiff brought a misclassification claim against Restoration Hardware ("RH") seeking "wages, reimbursement for expenses, and the value of benefits plan that he would have

7

received had he been classified as an employee." Lavery, 2018 WL 1524398, at *1. RH moved to partially dismiss the claim for damages to the extent that the claim for the value of benefit plans was preempted by ERISA. Id. The court, relying on Hampers and Reyes, found that ERISA preemption applied and allowed the partial motion to dismiss. Id. at *2–5. The court determined that Hampers' holding that "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan" was binding precedent. Id. at *2 (quoting Hampers, 202 F.3d at 52).

In response, Mr. Filleti presents five arguments against preemption, which the Court addresses in turn. Each of these arguments has been considered and rejected by either Remington or Lavery, neither of which this Court considers to be wrongly decided.[3]

First, Mr. Filleti suggests that it is commonplace for courts around the country to recognize that ERISA does not preempt claims seeking damages for the value of lost benefits. [ECF No. 14 at 6–7]. Mr. Filleti cites case law from a lengthy list of circuits and districts, but notably fails to point to any case law from the First Circuit or the District of Massachusetts for this proposition. [Id.]. While the Court takes notice that case law from other circuits may be more favorable to Mr. Filleti's position, the Court remains bound by precedent set by the First Circuit. As Judge Casper noted in Lavery, "until the First Circuit revisits its view articulated in Hampers, however, this Court is bound to follow it." Lavery, 2018 WL 1524398, at *4.

Second, Mr. Filleti contends that the claim he asserts in Count I cannot "relate to" an ERISA plan because he is asserting a misclassification claim and "is not claiming that AOL violated the law by failing to pay him benefits." [ECF No. 14 at 9–10]. The Court rejects this

---

[3] The plaintiffs in both Remington and Lavery brought misclassification claims and were represented by the same firm that represents Mr. Filleti in this action.

8

semantic distinction. Consistent with Hampers' directive to "'look beyond the face of the complaint' and determine the real nature of the claim 'regardless of plaintiff's . . . characterization,'" Hampers, 202 F.3d at 51, the Court finds in Mr. Filleti's misclassification claim an implicit assertion that AOL violated the law by failing to pay him benefits that were owed to "employees." Although Mr. Filleti may not be suing under a specific plan, his claim at-bottom seeks compensation for benefits he alleges he was owed, but not provided. See Remington, 2017 WL 1552316, at *3 (concluding that plaintiffs' misclassification claims, "whatever the basis of the underlying cause of action, can be distilled as non-participants seeking to recover the value of benefits they would have received as ERISA plan participants").

Third, Mr. Filleti argues that Remington should not inform this Court's analysis because it contains an "overly simplistic analysis of preemption" and was wrongly decided. See [ECF No. 14 at 13]. Specifically, Mr. Filleti asserts that Remington is unpersuasive because the opinion "[does] not cite to a single case holding that a plaintiff who suffers a loss of income and benefits by virtue of discrimination or misclassification is precluded by ERISA from seeking the value of those lost benefits." [ECF No. 14 at 11]. Mr. Filleti suggests that the Remington court should not have relied on Hampers, which involved a claim for a "specific ERISA-regulated benefit," or Reyes, which involved a claim "for defendants' failure to provide promised healthcare benefits," because neither addressed a misclassification claim. See [id. at 12–13]. These same arguments about Remington were considered thoughtfully by Judge Casper in Lavery and rejected, and this Court adopts Lavery's reasoning. See Lavery, 2018 WL 1524398, at *4.[4]

---

[4] In Lavery, the court rejected the argument that Remington "exceed[ed] the reach of both Hampers and Reyes" and was wrongly decided:

Fourth, Mr. Filleti asserts that his claim cannot be an "alternate enforcement mechanism" because he was an independent contractor, not a plan participant. [ECF No. 14 at 10–11]. This argument was also considered and rejected in Remington, and is similarly rejected here as well. See Remington, 2017 WL 1552316, at *4 (finding "creative" but "self-defeating" plaintiffs' argument that there was no need to look to the plans to determine eligibility for benefits because the plaintiffs would not be eligible as independent contractors).

Finally, Mr. Filleti concedes that a damages calculation in this case "might warrant reference to AOL's benefit plans" but presents alternative calculation methods such as eliciting testimony from an AOL employee about the value of fringe benefits generally or referencing the AOL employee handbook. [ECF No. 14 at 14]. This argument, too, was considered and rejected in Remington. See Remington, 2017 WL 1552316, at *4 ("Given that plaintiffs' alleged harm is the deprivation of benefits under the specific plans administered by [defendant], '[a]ny other

---

> Certainly, both Hampers and Reyes involve challenges to an employer's decision with respect to the benefits plan, whereas Lavery's claim involves a challenge to an employer's decision with respect to the employment contract, and thus, similar to Remington and unlike in Hampers or Reyes, the terms of the plan are not relevant to the issue of liability under Lavery's state law claims, but only to the issue of damages. Nevertheless, Hampers also ruled that "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan."
>
> Lavery contends, however, that this statement from Hampers cannot mean what it says. Lavery points to cases from other circuits holding that a complaint that merely requires reference to the terms of an ERISA-covered plan to determine damages is not preempted by ERISA. The only case Lavery cites from the First Circuit, however, is Boston Children's Heart Foundation, Inc. v. Nadal-Ginard, 73 F.3d 429 (1st Cir. 1996), a case which did not directly address the issue at hand.
>
> . . . Until the First Circuit revisits its view articulated in Hampers, however, this Court is bound to follow it.

Lavery, 2018 WL 1524398, at *4.

measure of damages would be based on pure speculation.'" (quoting Reyes, 2014 WL 5485943, at *14)).

Accordingly, under Hampers and its progeny, the Court finds that Count I "relates to" covered plans within the meaning of ERISA's preemption clause because the damages under Count I must be calculated using the terms of the plans of which Mr. Filleti would have been a beneficiary if he had been classified as an employee. See Mass. Gen. Laws ch. 149, § 150 (allowing civil actions to recover "any lost wages and other benefits"); Hampers, 202 F.3d at 52.

## IV. CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss [ECF No. 11] is GRANTED and Count I of the complaint is dismissed with respect to any claim by Mr. Filleti for employee benefits related to an employee benefit plan covered by ERISA.

**SO ORDERED.**

February 22, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE